JS 44   (Rev. 06/17)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
MARK ROLLER

### DEFENDANTS
LUMBERMEN'S MERCHANDISING CORP.,

**(b)** County of Residence of First Listed Plaintiff     Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jonathan L. Bernstein, Meenan & Associates, LLC, 299 Broadway, Suite 1310, New York, NY 10007; P: (212) 226-7334

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 12101
Brief description of cause:
Employment discrimination and retaliation

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER                MAR 28 2019

DATE
03/27/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

GJP

19   1310

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _853 Hinchley Run, West Chester, PA 19382_

Address of Defendant: _137 West Wayne Avenue, Wayne, PA 19087_

Place of Accident, Incident or Transaction: _137 West Wayne Ave, Wayne PA_

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☐

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _3/28/19_    _____    _325422_
　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* _Employment_

**B.    Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Jonathan Bernstein_, counsel of record *or pro se plaintiff*, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

- ☐ Relief other than monetary damages is sought.

MAR 28 2019

DATE: _3/28/19_    _____    _325422_
　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

|  |  |  |
|---|---|---|
| | : | CIVIL ACTION |
| v. | : | |
| | : | **19    1310** |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                 ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (✓)

| | | |
|---|---|---|
| <u>3/28/19</u> | <u>Jonathan Bernstein</u> | <u>Mark Roller</u> |
| **Date** | **Attorney-at-law** | **Attorney for** |
| <u>(212) 226-7334</u> | <u>(212) 226-7716</u> | <u>jb@ meenanesqs.com</u> |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAR 28 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARK ROLLER,                                    :
                                                :        19 Civ.
                        Plaintiff,              :
                                                :
        - against -                             :
                                                :
LUMBERMEN'S MERCHANDISING CORP.,                :
                                                :
                        Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**COMPLAINT AND DEMAND FOR JURY TRIAL**


<div style="display:flex">

MEENAN & ASSOCIATES, LLC
By: Jonathan A. Bernstein
*Co-counsel for Plaintiff*
299 Broadway, Suite 1310
New York, New York 10007
(212) 226-7334
jb@meenanesqs.com

CONOVER LAW OFFICES
By: Bradford D. Conover, Esq.
Molly Smithsimon, Esq.
*Co-counsel for Plaintiff*
345 Seventh Avenue, 21st Fl.
New York, NY  10001
(212) 588-9080
brad@conoverlaw.com
molly@conoverlaw.com

</div>

#400

GJP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MARK ROLLER,                              :

              Plaintiff,           :

      - against -                          :

LUMBERMEN'S MERCHANDISING CORP.,          :

             Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

19    1310

19 Civ.

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Plaintiff, Mark Roller (hereinafter "Roller"), complaining of defendant, Lumbermen's

Merchandising Corp. (hereinafter "LMC"), by his attorneys, Meenan & Associates, LLC and

Conover Law Offices, alleges as follows:

### NATURE OF THE ACTION

1.      This is an action under the Americans with Disabilities Act, 42 U.S.C. §§ 12101

*et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*

("ADEA"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") and the

Pennsylvania Human Relations Act, P.S. §§ 951 *et seq.* ("PHRA") to correct unlawful

employment practices on the basis of Plaintiff's disability status, age and/or family and medical

leave status.

2.      Mr. Roller, a successful 27-year employee of LMC, took protected medical leave.

Defendant, acting not on evidence, but rather speculation, and contrary to the findings of its own

specially-retained psychiatrist, then concluded that Plaintiff posed a danger to himself or others.

Notwithstanding that conclusion, Defendant then reinstated Plaintiff to a low-level position,

subjected him to unwarranted scrutiny and unachievable metrics, and discharged him from

employment.

3.     Defendant's actions were unlawful, and plaintiff brings this action for injunctive and declaratory relief, lost earnings and benefits, compensatory damages, liquidated damages, punitive damages, attorneys' fees, and other appropriate equitable and legal relief.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction of this action pursuant to  (i) 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; (ii) the FMLA, 29 U.S.C. § 2617; (iii) the Declaratory Judgment Statute, 28 U.S.C. § 2201;  and (iv) 28 U.S.C. § 1367(a), in that the state and federal claims arise from a common nucleus of operative fact such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as the defendants have offices, conduct business and can be found in the Eastern District of Pennsylvania and the causes of action arose and occurred in the Eastern District of Pennsylvania. Venue is also proper in this Court pursuant to § 107(a) of the ADA, 42 U.S.C. § 12117, inasmuch as the unlawful employment practices complained of herein occurred within the Eastern District of Pennsylvania.

## PROCEDURAL REQUIREMENTS

6.     On or about January 29, 2018, Mr. Roller timely filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") against LMC. The Charge was cross-filed with the Pennsylvania Human Relations Commission. On or about May 21, 2018, the Charge was amended to allege his discharge and retaliation claims.

2

7.      More than one hundred eighty days have passed since the timely filing of the Charge. On or about March 6, 2019, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff has accordingly exhausted his administrative remedies under the ADA.

8.      More than one year has passed since the timely filing of the Charge. Plaintiff has accordingly exhausted his administrative remedies under the PHRA.

## PARTIES

9.      Mr. Roller is a natural person and citizen of the United States currently residing in West Chester, County of Delaware, Commonwealth of Pennsylvania. At all relevant times, he has been an "employee" within the meaning of 42 U.S.C. § 12111(4), 29 U.S.C. § 630(f), and 43 P.S. § 954(c) and an "eligible employee" within the meaning of 29 U.S.C. § 2611(2)(A). At all relevant times, he was and still is able to perform the essential functions of his position in defendant's employ, with or without reasonable accommodation, and therefore has been a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8) and/or has been "regarded as" such within the meaning of 42 U.S.C. § 12102(2)(C) and/or has a "record of a disability" within the meaning of 42 U.S.C. § 12102(2)(B).

10.     LMC is a domestic corporation duly organized under the law of Pennsylvania with a principal place of business at 137 West Wayne Avenue in Radnor Township, County of Delaware, Commonwealth of Pennsylvania. At all relevant times, LMC has been an "employer" within the meaning of 42 U.S.C. § 12111(5), 29 U.S.C. § 630(b), 29 U.S.C. § 2611(4)(A)(i) and 43 P.S. § 954(b).

## PLAINTIFF'S FACTUAL ALLEGATIONS

11.     On or about October 10, 1989, LMC hired Mark Roller as a Buyer/Trader. LMC is a forest products and building materials buying group owned by independent lumber and building material dealers.

### Plaintiff's Superior Performance and Promotions

12.     During the approximately nine years Mr. Roller served as a Buyer/Trader, he consistently received highly favorable performance reviews. In those reviews, his supervisors made the following comments about his performance: "Mark consistently performed at highly professional level. The corporation is pleased with Mark's strong performance during 1997;" "Mark is one of the most creative buyers;" "Mark is a believer in team concepts and is a major contributor to the high morale due to his superb work production levels and attitude;" "Great attitude team player. Excellent rapport with dealers;" "Mark Roller has continued to perform at a highly professional level;" "Mark Roller's presentation this week was one of the most professional he has ever seen from an LMC;" "Mark is deserving of his budgeted additional incentive;" and "Mark has attributes for a long career."

13.     In June 1998, Mr. Roller was promoted to Department Manager for Engineered Wood Products.

14.     During Mr. Roller's management of Engineered Wood Products, sales rose from approximately $20 million to $80 million, and his business unit became one of LMC's largest departments.

15.     In 2002, Mr. Roller was promoted to Purchasing Manager of the Engineered Wood and the Boards and Specialties Departments.

4

16.    During his management of Engineered Wood and the Boards and Specialties Departments from 2005 to 2017, Mr. Roller managed approximately three direct reports and eleven indirect reports. During his management, total sales of his business unit (later renamed Specialty Wood Products, "SWP") grew from approximately $95 million to approximately $650 million. From 2012-17, SWP was ranked in the top three business units at LMC.

17.    From 2002 through 2017, Mr. Roller's performance continued to be rated as "fully meets expectations" or "exceeds expectations." In recognition of his good performance, Mr. Roller regularly received annual raises and bonuses.

18.    In February 2017, Mr. Roller received his 2016 annual performance review with an annual performance bonus. His overall rating was "fully meets expectations," and his review included the following comments: "I feel that Mark has a good temperament and it drives business;" "Mark is committed to satisfying customers;" "Mark oversees a cohesive team;" "SWP had a year of excellent growth;" "Overall SWP business unit had a strong performance in 2016 and exceeded plan by 2.5%;" "Mark is an even tempered manager and looks at things with an open mind;" and "He is always willing to help."

19.    More than 29 years ago, Mr. Roller had an alcohol dependency condition and stopped drinking. He has not had a drink since. About 19 years ago, he was diagnosed and treated for anxiety, depression, and obsessive-compulsive disorder. Since then, he has been in regular psychotherapy treatment and counseling.

20.    Over the last nine years of his employment, eight of Mr. Roller's close family members became ill and died of cancer. As a result, during the final two years of his employment, he began to experience grief, and the succession of illnesses and deaths, as well as other family events, triggered his anxiety and depression.

5

<u>Plaintiff Discloses His Disabilities</u>

21.     On several occasions in 2016, Mr. Roller told his direct Supervisor, Melvern

Dando, VP of Panels and Specialties, about his private struggles with anxiety and depression. As

Mr. Roller and Mr. Dando, on occasion, socialized, Plaintiff also had told Mr. Dando privately

that he was a recovering alcoholic and had not had a drink in 27 years.

<u>Defendant Suggests that Plaintiff Take Medical Leave</u>

22.     In February 2017, at the recommendation of Mr. Dando, Andrew Toombs, Senior

Vice President, and Amy Bilovsky, Human Resources Director, he requested a few weeks

FMLA leave to address his grief, anxiety and depression.

23.     On or about March 10, 2017, at age 55, he went out on approved FMLA leave and

decided to enroll in an outpatient emotional therapy program at Mirmont Treatment Center

("Mirmont"). He was in the program for three weeks from March 13-31, 2017.

<u>Plaintiff Requests, and Defendant Grants, an Extension of Medical Leave</u>

24.     On or about the first week of April, 2017, he returned to work at LMC. However,

a week or so later, Mr. Roller's sister-in-law was dying of pancreatic cancer, and his wife was

her primary caregiver at home. Mr. Roller therefore requested a continuation of his leave during

the week of April 17-21, 2017 to help care for his sister- in-law.

25.     Mr. Dando said there was no need for him to come to the office that week, but

mentioned that there was HR paperwork to complete. At the end of the week, on Friday, April

21, 2017, Mr. Roller went to the office to complete the HR paperwork. When he arrived, he

called LMC's Human Resource Director, Amy Bilovsky, concerning the paperwork, but did not

hear back.

6

26.    As he arrived at work on April 21st, one of his reports, Susan Krepps, asked: "You do not look good today, is everything all right?" Previously, Ms. Bilovsky had commented "be aware that sometimes people don't know how to read you because you may come in sad, grief-stricken or they may think you're angry." Accordingly, and since he had been away from work for about 20 days, he felt it was proper to let Susan and the staff know where he had been.

<u>Plaintiff's Meeting with his Staff; Defendant's Overreaction</u>

27.    Mr. Roller told the staff who were present about his sister-in-law's cancer and her imminent death and the recent death, while he was at Mirmont, of his brother-in-law's wife. He told them why he had been out on leave earlier in the month at Mirmont, and how that treatment had helped him. He gave them some background to his struggles, 18 years earlier, with OCD, depression and anxiety, and how the recent succession of deaths and illnesses in his family had triggered grief and some of those symptoms. At times, he was tearful, and they appeared sympathetic, with one employee sharing her own experience with OCD. It is common for LMC employees to share personal stories, and Mr. Roller had helped one direct report through her own struggles with alcohol addiction.

28.    Later that Friday, Mr. Roller received a call from Mr. Dando, who told Plaintiff that he had "mismanaged the meeting" with his staff and not to come in on Monday. The next morning, Mr. Roller's sister-in-law died. On Sunday, Mr. Dando called and told Plaintiff not to come in that week, except for a meeting on Friday.

29.    On Friday April 28, 2017, Mr. Roller went to work and met with Ms. Bilovsky, Mr. Dando and Andrew Toombs, SVP. He was handed a letter offering either a termination, with six months' severance, or a demotion from Purchasing Manager to the non-managerial position of a Buyer/Trader, the position that he had occupied when he first joined LMC more than 27

7

years earlier. When he questioned why he was being either forced to resign or demoted, he was advised that the employees who he had told about his leave of absence were afraid to work with him, fearful that he would hurt himself or them. Mr. Roller was handed a letter, dated April 28, 2017, and proposed Separation Agreement.

30.    LMC's letter stated that "on Friday, April 21, 2017, several employees reported to their direct supervisor that they were concerned about your safety as well as their own."

31.    Upon information and belief, LMC's purported concerns about safety arose not from reports from "several employees" in attendance at the April 21st meeting, but from a text from one of Mr. Roller's direct reports, Ron Thompson, who did not attend the April 21st meeting.

32.    The letter also stated: "Not only have you demonstrated serious performance deficiencies for a significant period of time but you have now lost the confidence of your entire staff, many of whom are afraid to work with you."

33.    At the meeting, he asked if any of the purported "serious performance" issues were ever mentioned in any of his annual performance reviews, and Mr. Dando responded only: "They were sprinkled in." In fact, Mr. Roller's performance reviews were all favorable and did not identify any "serious performance deficiencies."

<u>Defendant's False Accusations</u>

34.    The next week, on or about May 2, 2017, Mr. Roller received another letter, dated April 25, 2017, which contained a litany of false accusations and innuendo that, on April 21st, his "speech was slurred and incomprehensible," his "gait was unsteady," "LMC employees observed [him] sleeping in [his] car," and that he had come to work contrary to instructions not to come to work. The obvious implication of the letter was that he was intoxicated.

8

35.    By letter dated May 5, 2017, Mr. Roller responded to both the April 28th and April 25th letters. He advised Ms. Bilovsky that the accusations were false, that he had not had a drink in 28 years, and that he had said absolutely nothing in the meeting with his staff which would make any reasonable person fear for their safety or his own.

36.    As Mr. Roller's own doctor had cleared him for return to his normal duties after expiration of the FMLA leave, Mr. Roller also advised Ms. Bilovsky that he believed that the demand for a medical examination by LMC's doctor violated his medical privacy and was contrary to the FMLA, and that the decision to demote him, based on unfounded fears and stereotypes associated with mental illness, violated both the ADA and the FMLA. He also advised Ms. Bilovsky that the rationale for his termination, that he was placing himself or others at risk, was inconsistent with LMC's proposal that he return to the workplace in a demoted position.

37.    Mr. Roller never did or said anything to cause LMC to fear that he was a threat to himself or others.

38.    Mr. Roller's psychiatrist of 18 years, Dr. Eric Becker, supplied LMC with several letters in support of the FMLA leave, dispelling the unfounded fears about his being a "source of danger," and confirming the temporary nature of his leave and ability to return to his normal managerial functions and regular job responsibilities after his leave.

<u>Defendant Issues Plaintiff an Ultimatum</u>

39.    Despite his request, LMC refused to extend the 21-day period afforded Mr. Roller to choose between a forced resignation or a demotion. LMC, during the 21-day period, refused to inform Mr. Roller of the salary of the Trader/Buyer job they were offering. Only after the 21-day period expired did LMC advise Mr. Roller that, if he accepted the Trader/Buyer job, his base

9

salary would be cut by more than 20% and his gross compensation might be reduced by more than one-third.

40.     LMC's decision on April 28, 2017 to force Mr. Roller's resignation or demotion was done despite Dr. Becker's clearance to return Mr. Roller to his managerial position and in the absence of any contrary medical opinion.

41.     LMC's decision on April 20, 2017 to force Mr. Roller's resignation or demotion was based on stereotypical fears associated with medical illness.

42.     As LMC left him no alternative other than a forced resignation or demotion, Mr. Roller advised LMC that he believed that its actions were in violation of the ADA and FMLA. He also agreed, "without waiver or prejudice" to LMC's proposal that he go through a medical fitness-for-duty examination and further counseling, despite his psychiatrist's advice that neither were necessary and that he could return immediately to his managerial position.

<u>Defendant Requires Mr. Roller to Undergo Psychiatric Evaluation</u>

43.     On or about Friday, May 26, 2017, Ms. Bilovsky emailed Mr. Roller that he must attend a psychiatric examination to be administered by Dr. Dale E. Panzer on Tuesday, May 30, 2017. As he had planned to travel that day to care for his ill mother, he requested a new date. LMC refused to reschedule the examination and conditioned its offer of a demoted position on Mr. Roller attending the examination on May 30, 2017.

44.     Ms. Bilovsky had sent Dr. Panzer a letter, dated May 24, 2017, expressing unsubstantiated fears and making many false accusations against Mr. Roller, including the accusation that he "demonstrated potentially violent behavior outside of the workplace."

45.     At the conclusion of the examination, Dr. Panzer, the practitioner hired by LMC to perform the examination, asked Mr. Roller: "What do you want to happen?" Mr. Roller

10

responded that he believed that he should be returned to his managerial position at LMC. Dr. Panzer responded: "I agree."

46.     Based on Dr. Panzer's responses at the examination, Mr. Roller had every expectation that he would recommend Plaintiff's immediate return to his managerial position. Although HIPAA authorizations had been provided, at the time of the examination, Dr. Panzer had not obtained Dr. Becker's treatment records spanning 18 years.

47.     Ms. Bilovsky also advised that "applicable leave policies and health plan benefits shall apply," and she subsequently advised that Mr. Roller's sick leave would expire on July 12, 2017, *i.e.*, that he would have to apply for short term disability insurance at 60% of salary for the next three months and still not know whether LMC would permit him to return to work.

### The Psychiatrist's Contradictory Report

48.     In his report dated June 5, 2017 (the "June 5th Report"), Dr. Panzer states that: "Violence/Direct Threat: These issues were assessed as part of evaluation. There was no indication of any imminent threat of self-harm or harm to others."

49.     On the next page of the June 5th Report, Dr. Panzer reached the opposite conclusion, stating: "I did find psychiatric evidence that the employee is at present risk of intentionally causing harm to either himself or others at the workplace."

50.     The statements quoted in the above paragraphs 48-49 contradict each other.

51.     In the June 5th Report, Dr. Panzer cites neither actions taken nor words spoken by Mr. Roller in support of his conclusion that Mr. Roller posed a danger to anyone. Instead, Dr. Panzer purported to base his conclusion that Mr. Roller was unfit for duty on the results of an MMPI-2-RF administered on May 31, 2017, as interpreted by Richard Frederick, M.D., a clinical and forensic psychologist.

11

52.    The June 5th Report does not support LMC's demand that Mr. Roller accept a

demotion: "The employee reports that he has performed his work for about 28 years, 90% of his

job is direct work and only 10% has been administrative. I believe the employee has the potential

with appropriate treatment to resume very familiar work, provided it is adequately supervised

and he meets performance expectations in his typical work role."

53.    Nothing in the June 5th Report supports LMC's position that Mr. Roller's

psychological condition renders him capable of performing as a trader, but unable to continue as

a manager.

54.    By demoting Mr. Roller, at age 55, to the job title of Buyer/Trader, LMC not only

significantly reduced his compensation, LMC put him in the position of having to explain his

sudden demotion to LMC's stockholders. LMC's stockholders are the owners of the businesses

and lumberyards Defendant serves. As a Buyer, Mr. Roller would be required to call on LMC's

stockholders and suppliers to generate sales, the benchmark of success at LMC.  The

stockholders and suppliers had known him for more than nine years as a manager of one of

LMC's most successful business units.

<u>Defendant Orders Additional Psychiatric Testing; Plaintiff is Cleared to Return to Work</u>

55.    After undergoing three months of psychotherapy required by LMC, LMC directed

that Mr. Roller take another psychological test. On or about October 16, 2017, Plaintiff

underwent a neuropsychological examination with another psychologist selected by LMC, Dr.

Sugalski. Dr. Sugalski issued a report, dated November 14, 2017, and concluded: "Based on

current examination, I do not see any significant factors that would preclude him from

performing his job."

56.    Mr. Roller then provided Dr. Sugalski with the examination results from the

12

MMPI-2-RF, administered on May 31, 2017, and previously interpreted by Dr. Fredericks. Dr. Sugalski issued a report, dated January 13, 2018, concluding that the MMPI-2-RF May 31st test results did not support Dr. Panzer's conclusion that Mr. Roller posed a threat or was unfit for his managerial job. Dr. Sugalski stated that Mr. Roller did not pose "any kind of threat of violence to [him]self or others, nor do the results suggest that [he was] unfit to return to [his] managerial job."

57.     On December 18, 2017, LMC required that he undergo another fitness-for-duty examination by the psychologist Dr. James Langan. In his report dated December 27, 2017, Dr. Langan concluded that "there was no evidence that Mr. Roller presents a significant risk of harm to himself or others at work" and that he can "return to work" and that "part time work be offered for at least eight weeks." Nothing in Dr. Landan's report suggested that he could not return to the managerial position that he had occupied. On this subject, Dr. Langan stated only that "reassignment of Mr. Roller to a position that is different from the one he held before his psychiatric decompensation is the prerogative of FMC [LMC]. I would anticipate that there is a risk that Mr. Roller would view this as a demotion and experience this as a blow to his self-esteem."

<u>Defendant Demotes Plaintiff</u>

58.     After nearly nine months out of work, Mr. Roller received a letter from Ms. Bilovsky, dated January 12, 2018, inviting him to return to LMC, but only in a demoted capacity as a Trader.

59.     Neither Mr. Roller's psychiatrist, nor any of the medical professionals he had seen at LMC's insistence, had suggested that he should be demoted.

13

60.     Nevertheless, Mr. Roller's family financial situation required that he return to work, and he did so, on or about February 1, 2018, as a Trader.

<u>Following Plaintiff's Charge of Discrimination, Defendant Retaliates</u>

61.     On or about January 29, 2018, Mr. Roller filed an EEOC charge alleging disability discrimination, *i.e.*, his forced demotion following disclosure of his disability, and age discrimination.

62.     Upon Mr. Roller's return to work, he was placed under heightened scrutiny. He had never before experienced such scrutiny at LMC during his 28-year tenure, nor had he witnessed any other employee being subjected to such scrutiny.

63.     Immediately upon his return, his coworkers were enlisted to keep a "Roller Daily Log" and record every interaction with Mr. Roller.

64.     The demotion to a new position as a Trader required Lumber Track ("LT") training.  LT is a software program by which lumber products are ordered.  Although he made occasional errors, like all traders in training, Mr. Roller's job performance, at all times, was satisfactory or better.

65.     Mr. Roller was assigned a territory that was different, with wood products different from the other Traders. He had about five different species of wood products, and many different species types (such as kiln dried, green, domestic, Canadian, etc.) in comparison to most LMC Traders, who had one or two species. Each product has a different code. He was also assigned approximately 25 mills, whereas most Traders had fewer than ten mills. This required a longer learning curve relative to other Traders.

66.     The other LMC Traders included Trevor Swanson (SPF only), Tammy Donato (SPF only), Dave Penny (Green Douglas Fir & White Fir), Mark Dwyer (Green & Kiln Dried

14

Douglas Fir), Steve Evans (Green & Kiln Dried Douglas Fir), Wayne Getz Green (Douglas Fir). None of them were given five species and 25 mills.

67.    The skills that Mr. Roller was required to learn and set up included LT, Outlook, and Cisco Jabber. He also had to learn from various lumber mill websites what kind of lumber each of the mills was pulling and milling.

68.    Mr. Roller was hired part time, 9 am - 12 pm, from February 1st to March 30th. When he stayed after 12 pm to sharpen his LT skills, he was criticized for staying late.

69.    It typically takes two to three months to learn LT.

70.    Mr. Roller's supervisors, Jim McMenamin and Dave Penny, did not respond to crucial emails when he requested assistance or a meeting.

71.    Mr. Penny periodically stood over Plaintiff's desk watching his every move and demanded that he move quickly at the cost of accuracy.

72.    Mr. Roller's supervisors were also tracking the time he took to respond to emails. Other trackers' response time was not similarly tracked.

73.    Mr. Roller was not permitted to seek help from other Traders who had offered to help.

74.    Mr. Roller was not permitted to call the mills, as he had done for years.

75.    Upon information and belief, Mr. Penny omitted information Mr. Roller needed to master the LT ordering system.  No other Trader was subjected to this treatment.

76.    After one week, Mr. Roller was given a memorandum entitled "Mark Roller Onboarding Week One Recap," dated February 12, 2018, criticizing his job performance. In the memorandum, Mr. McMenamin stated that Plaintiff had failed to meet various expectations concerning his training as a Trader.

77.    In fact, the expectations stated in the Onboarding Recap had never been communicated to Mr. Roller by his supervisors. Mr. Roller submitted a written response, dated February 19, 2018, disputing many of the statements in the Recap.

78.    LMC's failure to apprise Mr. Roller of the expectations ran counter to its own doctor's, Dr. Langan's, recommendation that LMC reasonably accommodate Mr. Roller's disability and "[a]ssigned work tasks should be well familiar to him and work instructions should be kept simple with verification that he has understood what is expected of him."

79.    Upon information and belief, LMC has never given any other employee an "Onboarding Week One Recap," nor has LMC instructed its employees to maintain a Daily Log on a co-worker.

80.    On February 14, 2018, Mr. Roller took an LT test and was advised that he needed to increase his order speed. On February 20th, he took and passed another LT test on speed and accuracy.

81.    The heightened scrutiny, however, did not abate. In various tests, Mr. Roller was given incomplete, corrupted or faulty information and, on a daily basis, held to standards not imposed on other Traders.

82.    Mr. Roller witnessed his supervisor rifling through his desk.

83.    During this period, other Traders were making mistakes on a daily basis without consequence, but when Mr. Roller made mistakes, the mistakes were noted by his supervisors.

84.    Mr. Roller requested that he be permitted to attend purchasing clinics, but permission was denied.

85.    Shortly after Mr. Roller's demotion, LMC replaced him with Ron Thompson, who is younger, does not suffer any disabilities and had not recently taken FMLA leave, as

16

Purchasing Manager.

86.     Prior to his demotion, Mr. Roller had been Mr. Thompson's manager.

87.     Each year during the period that Mr. Thompson reported to Mr. Roller, Mr. Roller requested that Mr. Thompson learn how to enter orders using LT. Nevertheless, Mr. Thompson failed and refused to do so.

88.     On or about April 9, 2018, Mr. Roller reported his concern that his supervisors had ignored his request for a meeting to address false allegations that he had not timely responded to dealer inquiries from Alaska and New Jersey.

89.     On or about April 24th, Mr. Roller learned that his uncle was seriously ill. Mr. Roller completed work quickly, left several minutes early and was not able to complete an order for lumber.

90..    The next morning, Mr. Roller heard that his uncle had died and took the day off with LMC's approval.

91.     Inasmuch as the recent deaths in his family had triggered anxiety attacks, Mr. Roller had been in treatment and counseling for that anxiety. As he felt increased anxiety, he went to Ms. Bilovsky to request medical leave and leave to attend his uncle's service. She approved the leave.

92.     On Friday, April 27, Mr. Roller returned to work.  However, he continued to experience anxiety concerning his uncle's death. Around noon, he went to see Ms. Bilovsky to request medical leave for the rest of the day. She responded by stating "we are terminating you, and I guess you know why." However, he did not know why. After less than three months in the new job, he was terminated, with no explanation, immediately after he requested medical leave.

93.     Shortly after terminating Mr. Roller's employment, LMC posted an opening for a Trader.

## COUNT I - VIOLATION OF TITLE I OF THE ADA

94.     Plaintiff incorporates by reference Paragraphs 1 through 93 of this Complaint as though the same were fully set forth fully herein.

95.     LMC discriminated against plaintiff when it subjected him to a psychiatric examination that was not job-related.

96.     The effect of the practices complained of herein has been to deprive Mr. Roller of equal employment opportunities and otherwise to limit, segregate or classify him because of his disability, because of his record of disability and/or because LMC regarded him as a person with a disability.

97.     The unlawful employment practices complained of herein were and are malicious, intentional and in reckless disregard of plaintiff's health and well-being.  As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, front pay, punitive damages and attorneys' fees.

## COUNT II - VIOLATION OF TITLE I OF THE ADA

98.     Plaintiff incorporates by reference Paragraphs 1 through 97 of this Complaint as though the same were fully set forth fully herein.

99.     LMC, having failed and refused to engage in any interactive process to determine Plaintiff's  ability to perform his then-current managerial duties with, or without, a reasonable accommodation, demoted Plaintiff immediately after his return from medical leave.

100.    LMC determined that Mr. Roller was unfit to perform his managerial job based

18

solely on false rumor, innuendo, and stereotypical fears about persons suffering from anxiety and depression.

101.    LMC discriminated against plaintiff when it demoted him to a lesser-paid position with lesser responsibilities.

102.    Even when LMC has demoted employees based on a history of documented performance issues, such as Denise Henderson and Bud Diksa, LMC did not reduce their salaries.

103.    When Plaintiff returned from medical leave, LMC gave him the alternative of termination or a significantly reduced salary and diminished job responsibilities, despite the absence of documented performance problems.

104.    The effect of the practices complained of herein has been to deprive Mr. Roller of equal employment opportunities and otherwise to limit, segregate or classify him because of his disability, his record of disability and/or because LMC regarded him as a person with a disability.

105.    The unlawful employment practices complained of herein were and are malicious, intentional and in reckless disregard of plaintiff's health and well-being.  As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, front pay, punitive damages and attorneys' fees.

## COUNT III - VIOLATIONS OF TITLE I OF THE ADA

106.    Plaintiff incorporates by reference Paragraphs 1 through 105 of this Complaint as though the same were fully set forth fully herein.

107.    LMC discriminated against plaintiff when it discharged him from employment.

19

108.    The effect of the practices complained of herein has been to deprive Mr. Roller of equal employment opportunities and otherwise to limit, segregate or classify him because of his disability, his record of disability and/or because LMC regarded him as a person with a disability.

109.    The unlawful employment practices complained of herein were and are malicious, intentional and in reckless disregard of plaintiff's health and well-being.  As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, front pay, punitive damages and attorneys' fees.

## COUNT IV- RETALIATION IN VIOLATION OF THE ADA

110.    Plaintiff incorporates by reference Paragraphs 1 through 109 of this Complaint as though the same were fully set forth fully herein.

111.    LMC retaliated against Plaintiff in violation of 42 U.S.C. § 12203 when it discharged him from employment in retaliation for having filed a charge of discrimination based on disability with the EEOC.

112.    The effect of the practices complained of herein has been to deprive Mr. Roller of equal employment opportunities and otherwise to limit, segregate or classify him because of his disability, his record of disability and/or because LMC regarded him as a person with a disability.

113.    The unlawful employment practices complained of herein were and are malicious, intentional and in reckless disregard of plaintiff's health and well-being.  As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including

but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, front pay, punitive damages and attorneys' fees.

## COUNT V- VIOLATIONS OF THE
## AGE DISCRIMINATION IN EMPLOYMENT ACT

114.     Plaintiff incorporates by reference Paragraphs 1 through 113 of this Complaint as though the same were set forth fully herein.

115.     Upon information and belief, LMC has demoted or terminated other employees on the basis of age on the pretext of performance issues.

116.     Defendant discharged or otherwise discriminated against Mr. Roller with respect to his terms, conditions, or privileges of employment, when it demoted him because of such his age in violation of the ADEA, 29 U.S.C. § 623.

117.     As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to lost wages and benefits, front pay, liquidated damages and attorneys' fees.

## COUNT VI- VIOLATIONS OF THE
## AGE DISCRIMINATION IN EMPLOYMENT ACT

118.     Plaintiff incorporates by reference Paragraphs 1 through 117 of this Complaint as though the same were set forth fully herein.

119.     Defendant discharged or otherwise discriminated against Mr. Roller with respect to his terms, conditions, or privileges of employment, when it discharged him because of such his age in violation of the ADEA, 29 U.S.C. § 623.

120.     As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to lost wages and benefits, front pay, liquidated damages and attorneys' fees.

21

## COUNT VII- VIOLATIONS OF THE
## AGE DISCRIMINATION IN EMPLOYMENT ACT

121.    Plaintiff incorporates by reference Paragraphs 1 through 120 of this Complaint as though the same were set forth fully herein.

122.    LMC retaliated against Plaintiff in violation of 29 U.S.C. § 623(d) when it discharged him from employment in retaliation for having filed a charge of discrimination based on age with the EEOC.

123.    As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to lost wages and benefits, front pay, liquidated damages and attorneys' fees.

## COUNT VIII- VIOLATIONS OF
## THE FAMILY AND MEDICAL LEAVE ACT OF 1993

124.    Plaintiff incorporates by reference Paragraphs 1 through 123 of this Complaint as though the same were set forth fully herein.

125.    Mr. Roller's anxiety and depression is a chronic serious health condition within the meaning of 29 C.F.R. § 825.102.

126.    LMC failed and refused to reinstate Mr. Roller to his position following his return from medical leave in violation of 29 U.S.C. § 2612(a)(1)(C).

127.    LMC violated 29 U.S.C. § 2615(a) and 29 C.F.R. § 825.220(a) by demoting and thereafter terminating Mr. Roller following his return from FMLA-protected leave of absence.

128.    Defendant's acts as set forth hereinabove were willful.

129.    As a result of defendant's acts, plaintiff has suffered grievous, extensive and continuing damages, including but not limited to lost wages and benefits, front pay, liquidated damages and attorneys' fees.

## COUNT IX - DISCRIMINATION IN VIOLATION OF
## THE PENNSYLVANIA HUMAN RELATIONS ACT

130.    Plaintiff incorporates by reference Paragraphs 1 through 129 of this Complaint as though the same were set forth fully herein.

131.    Defendant, by and through its agents, workmen, servants, employees, officers and directors violated the PHRA as alleged in this Complaint based on Mr. Roller's age and/or disability, resulting in the damages including but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, front pay, punitive damages and attorneys' fees.

## COUNT X - RETALIATION IN VIOLATION OF
## THE PENNSYLVANIA HUMAN RELATIONS ACT

132.    Plaintiff incorporates by reference Paragraphs 1 through 131 of this Complaint as though the same were set forth fully herein.

133.    43 P.S. § 955(d) prohibits retaliation against employees for opposing unlawful discrimination or participating in a protected activity.

134.    Defendant had actual knowledge that Mr. Roller had filed the Charge of Discrimination.

135.    Defendant demoted Mr. Roller and discharged him from employment in retaliation for filing the Charge.

136.    As a result, Mr. Roller has suffered damages including but not limited to pain and suffering, humiliation, emotional distress, lost wages and benefits, front pay, punitive damages and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Mark Roller respectfully prays that this Court:

a.      Declare Defendant's acts and practices complained of herein to be in violation of Roller's rights as secured by the ADA, the ADEA, the FMLA and the PHRA;

b.      Grant a permanent injunction enjoining the Defendant and its officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert therewith from any conduct violating Roller's rights as secured by the ADA, the ADEA, the FMLA and the PHRA;

c.      Order Defendant to make Roller whole by providing him appropriate lost earnings and benefits, together with pre-judgment interest and other affirmative relief including but not limited to front pay;

d.      Award Roller compensatory damages to be determined at the time of trial by the jury;

e.      Award Roller punitive damages to be determined at the time of trial by the jury;

f.      Award Roller liquidated damages as provided by the FMLA and the ADEA;

g.      Award Roller pre- and post-judgment interest;

h.      Award Roller reasonable attorneys' fees and costs incurred in prosecuting this action; and

i.      Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMANDED

The plaintiff requests a jury trial on all questions of fact raised by the Complaint.

Dated: New York, New York
March 27, 2019

MEENAN & ASSOCIATES, LLC
Co-Counsel for Plaintiff

By: _____
Jonathan A. Bernstein
299 Broadway, Suite 1310
New York, New York 10007
(212) 226-7334
jb@meenanesqs.com

CONOVER LAW OFFICES
Co-Counsel for Plaintiff

Bradford D. Conover, Esq.
Molly Smithsimon, Esq.
345 Seventh Avenue, 21st Fl.
New York, NY  10001
(212) 588-9080
brad@conoverlaw.com
molly@conoverlaw.com